AVERY and others *vs.* THE BLEES MANUFACTURING COM-PANY and others.

The bill in this cause was filed for relief against alleged fraudulent acts of a board of directors, alleged to be unlawful, and to have existed merely by usurpation. The property of the company requiring to be preserved. pending the litigation, and the conduct of the president and his associates in the direction, having been such that they could not be permitted to retain control of the affairs of the company, a receiver was appointed.

Bill for relief.   Motion for the appointment of a receiver..

*Mr. J. P. Stockton,* for motion.

*Mr. James Wilson, contra.*

THE CHANCELLOR.

On the case made by the bill and answer, there is no room for doubt or hesitation as to the course proper to be pursued. Two of the complainants are creditors and stockholders, and the others are creditors, only, of the company. The company was incorporated under the " act concerning corporations." Its capital stock was, nominally, $500,000, in shares of $100 each. Shares to the amount of $255,000 were issued to three persons, the complainants Avery and Studwell and the defendant Stears—eight hundred and fifty shares to each. Five shares were issued to each of two other persons. From the statements of the answer, it appears that Stears contributed $10,000 in money, for the purchase of the patent rights

under which the company proposed to carry on its business of manufacturing, and that machinery, tools, &c., to the value, according to the answer, of not more than $35,000, were purchased and paid for with stock of the company, to that amount, at its par value, and the factory was built, and the land whereon it was erected, purchased with $25,000, contributed to the company's funds for the purpose, by the citizens and municipality of Bordentown, for which stock was issued to the contributors. The company has never entered upon the business of manufacturing. On the 1st of August, 1876, the president and two other persons, acting as directors, (though, as the complainants allege, they had not been lawfully elected as such,) unlawfully, and clandestinely and collusively, as the bill alleges, authorized the execution of a bond of the company and a mortgage on the factory premises, to Garrit S. Cannon, Esq., as trustee for the contributors of the $25,000, to secure the payment of that sum, with $2000 added, for interest, on or before the 1st of September, 1876, and on the same day, in like manner, authorized the signing and sealing of a note in behalf of the company, in favor of the president, for $4000, alleged to be due to him on account of his salary as president, and another note of $1045 for the amount of loans alleged to have been made by him to the company. The complainant states that though the seal of the company was affixed to the bond and mortgage and notes, it had been surreptitiously taken for the purpose, from the office of the complainant Avery, who was the lawful secretary and treasurer, and as such, as the bill alleges, by appointment of the board, the lawful custodian thereof. The company, before the passing of the resolutions authorizing the making of those instruments, had been sued for debts and judgments recovered against them. Mechanics' lien claims had been filed against the factory building and premises, and suit had been commenced on them. The company's treasury was empty. The bond and mortgage, it is alleged by the defendants, were made under threats of proceedings in equity to recover the contributions, the re-payment

whereof was intended to 'be thereby secured. The defendant, Mr. Cannon, says, in his answer, that the company was, when the resolution was passed, and still is, insolvent. There can be no doubt that the company then was fast going to wreck. It had, according to the bill, in November, 1875, employed a number of workmen in cleaning and setting up the machinery, but they were discharged before the filing of the bill. There was, when this suit was commenced, no reasonable prospect that the company would be able to save its property or carry on business, and there is none now. It has no available assets. Its factory premises are mortgaged for, as is alleged, more than their value. Numerous suits have been brought against it for the recovery of debts due from it, which it has no means to pay. According to the answer, its stock, excepting that issued for the $25,000, and for machinery, tools, &c., and the $10,000 paid for the patent rights, was issued without any consideration. The complainants Avery and Studwell, as stockholders, are in a position to invoke the aid of this court against the bond and mortgage, which were, in fact, given to stockholders for money contributed to the company, on an agreement to take stock therefor, and against the notes given to the president. Though these notes have been assigned by Stears, the assignment does not appear to have been for any consideration, and, as far as appears, the endorsee holds them in trust for him. Suit has been brought against the company, upon them, in the name of the endorsee. The president seems to be the real plaintiff therein. The bill is not filed under the provisions of the act concerning corporations, in respect to insolvent corporations, but for relief against alleged fraudulent acts of a board alleged to be unlawful, and to have existed merely by usurpation. The property must be preserved, pending this litigation, and the conduct of the president and his associates in the direction, has been such that they cannot be permitted to retain control of the affairs of the company. A receiver will be appointed.

It seems quite clear that the corporation should be pro-- ceeded against in insolvency, either by a new bill or an, amendment of the bill in this suit.